FILED

2010 JUN 10 PM 3: 45

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  Paula D. Pearlman  (State Bar No. 109038)
   Paula.Pearlman@lls.edu
2  Shawna L. Parks     (State Bar No. 208301)
   Shawna.Parks@lls.edu
3  Matthew Strugar (State Bar No. 232951)
   Matthew.Strugar@lls.edu
4  DISABILITY RIGHTS LEGAL CENTER
   919 Albany Street
5  Los Angeles, California 90015
   Tel:  (213) 736-1031; Fax:  (213) 736-1428
6
7  Attorneys for Plaintiffs (continued on next page)

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 PETER JOHNSON, DONALD              Case No.: CV 08-3515 DDP (JTLx)
   PETERSON and MICHAEL
12 CURFMAN, ANDRE BUTLER, JOE         **FIRST AMENDED COMPLAINT FOR**
   GONZALEZ, COLUMBUS                 **DECLARATORY AND INJUNCTIVE**
13 GRIGSBY, and DERRICK WHITE on      **RELIEF FOR VIOLATIONS OF:**
   behalf of themselves and all others
14 similarly situated,                1.   **Americans with Disabilities Act**
                                           **(42 U.S.C. § 12131 et seq.)**
15              Plaintiffs,
                                      2.   **Section 504 of the Rehabilitation Act**
16          vs.                            **of 1973 (29 U.S.C. § 794 et seq.)**

17 LOS ANGELES COUNTY                 3.   **California Government Code Section**
   SHERIFF'S DEPARTMENT, a public          **11135, et seq.**
18 entity; LEROY BACA, as Sheriff of
   the County of Los Angeles, and     4.   **Unruh Civil Rights Act (Cal. Civil**
19 COUNTY OF LOS ANGELES, a                **Code §51, et seq.)**
   public entity, ,
20                                     5.   **Blind and Other Physically Disabled**
                Defendants.                **Persons Act (Cal. Civil Code § 54, et**
21                                         **seq.)**

22                                    6.   **California Government Code § 4450,**
                                           **et seq.**
23
                                      7.   **Eighth Amendment (42 U.S.C. §**
24                                         **1983)**

25                                    8.   **Fourteenth Amendment (42 U.S.C. §**
                                           **1983)**
26
                                                   **CLASS ACTION**
27

28

                                    1
        **FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

Hector Villagra     (State Bar No. 177586)
hvillagra@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1616 Beverly Boulevard
Los Angeles, California 90026
Tel: (213) 977-9500 Fax: (213) 250-3980

Anna Masters     (State Bar No. 117060)
amasters@winston.com
Benjamin Gipson  (State Bar No. 222830)
bgipson@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, California 90071
Tel: (213) 615-1700  Fax: (213) 615-1750

Melinda Bird     (State Bar No. 102236)
melinda.bird@disabilityrightsca.org
Rachel Scherer     (State Bar No. 260538)
rachel.scherer@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
3580 Wilshire Boulevard, Suite 902
Los Angeles, CA 90010
Tel: (213) 427-8747 Fax: (213) 427-8767

2

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

**JURISDICTION AND VENUE**

1.     The first two claims alleged herein arise under the Americans with Disabilities Act (42 U.S.C. §§ 12131 et seq.) ("ADA"), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 et seq.) ("Section 504"), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.  Through the same actions and omissions that form the basis of Plaintiffs' federal claims, Defendants have also violated Plaintiffs' rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

2.     Venue over Plaintiffs' claims is proper in the Central District of California because Defendants reside in the Central District of California within the meaning of 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Central District of California.

**INTRODUCTION**

3.     This lawsuit is brought to address systemic and pervasive discrimination against people with disabilities in the Los Angeles County Jail system. Despite the acute need for accommodations and physical access within the jail environment, the County of Los Angeles and Los Angeles Sheriff's Department currently fail to provide any legally acceptable level of access, services or accommodations for people with disabilities in the jails.

4.     Instead, people with disabilities in the Los Angeles County jails are denied accommodations or provided inadequate accommodations, inappropriately segregated, excluded from jail programs and services, and subjected to multiple and pervasive physical access barriers throughout the facilities. The result is a system that imposes some of the worst conditions on people with disabilities while at the same time excluding them from the most beneficial of programs within the jail. These conditions have dire consequences for people with disabilities.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

5.     From the time they are processed at the jail, people with disabilities face myriad discriminatory conditions. For example, at the Inmate Reception Center ("IRC") people with disabilities sit in their own feces for hours or days because there is no accessible bathroom available. Even though everyone entering the jail system passes through the IRC, and many remain there for days, there is not a single accessible toilet at this facility.

6.     Once they are housed, the discriminatory conditions continue. People with disabilities are housed in windowless, decaying facilities that are among the worst in the jail system. Most people with disabilities are kept in their cells 24 hours per day, other than occasional trips to the shower. Inmates with disabilities are regularly denied outdoor exercise, or any exercise at all, for months on end. Physical therapy is not provided to people with disabilities at the jail, no matter how great the need.

7.     People with disabilities are also explicitly denied the opportunity to be trustees, a valued position within the jail. They are also prohibited from participating in most jail programs, including vocational programs, because people with disabilities are housed in segregated settings that do not provide these services.

8.     Even when housed in units purportedly designated for people with disabilities, inmates face pervasive architectural barriers.  Many of these units lack required access features, such as grab bars in showers or toilets. As a result, many people with disabilities have fallen and injured themselves while simply trying to take a shower or use the toilet.

9.     Others have had their wheelchairs taken away or are denied the use of a wheelchair despite their obvious or documented need for one.  At best, these inmates use dangerously inadequate alternatives, such as walkers, in an attempt to move around. At worst, inmates must deal with excruciating pain when attempting to walk, crawl on the floor, or simply stay in bed for days, weeks or even months while they are incarcerated.

10.     Those who do receive wheelchairs or other equipment are often given equipment that is in a dangerous state of disrepair. For example, many of the wheelchairs provided within Los Angeles County Jails lack footrests. As a result, inmates' feet drag on the ground, causing them to bruise and making it extremely difficult and dangerous to move

---

4

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

to or from the wheelchair. In an attempt to avoid this dangerous situation, those who use these wheelchairs often tie plastic bags across the bottom as a makeshift footrest in an effort to gain leverage and balance.

11.     People with disabilities are also subjected to dangerous and difficult conditions when they are transported by the Sheriff's Department to and from the jails. People with disabilities often have their mobility aids taken away when boarding buses and must attempt to steady themselves for fear of falling. Inmates who use wheelchairs are often placed on buses with insufficient space for their wheelchairs. As a result, they must attempt to transfer on to benches without assistance, where they are neither restrained nor secured. In many of these situations, inmates with disabilities fall or nearly fall simply attempting to ride the jail's buses.

12.     People with disabilities who rely on medication or other medical supplies, such as catheters, to address their disability needs find that provision of such supplies within the jails is inconsistent at best and nonexistent at worst. Similarly, requested accommodations, such as an extra set of sheets for someone whose disability causes bladder control problems or a bottom bunk assignment for someone with a seizure disorder, are routinely denied. The result is that inmates' conditions become dangerously out of control or exacerbated by lack of necessary supplies and accommodations.

13.     These, and many other conditions, result in a system that violates the fundamental rights of people with disabilities within the Los Angeles County Jail system. Plaintiffs thus initiate this suit under Title II of the American with Disabilities Act, 42 U.S.C. 12131, *et seq*. (the "ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act"), as well as analogous state statutes alleging that Defendants discriminate against Plaintiffs based on their disabilities, and that Defendants maintain, operate, and control the Los Angeles County Jail System in a manner that violates the rights of people with disabilities under state and federal nondiscrimination statutes. The County's actions and inactions also clearly demonstrate a deliberate indifference to the needs and rights of people with disabilities within the Los Angeles

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

County jails in violation of their Eighth and Fourteenth Amendment rights. Plaintiffs thus also seek relief under 42 U.S.C. § 1983.

14.    Plaintiffs seek declaratory and injunctive relief pursuant to the above statutes, as well as an award of attorneys' fees and costs under applicable law.

## PARTIES

15.    Plaintiffs are people with disabilities who are or were housed within Los Angeles County Jail facilities.  They bring this lawsuit on behalf of themselves and all present and future inmates and detainees who are or will be housed in the Los Angeles County Jail system, and who, because of their disabilities, have been or will be discriminated against.

16.    Plaintiff Peter Johnson is paraplegic. Plaintiff Johnson is a "qualified person with a disability" within the meaning of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.

17.    Plaintiff Donald Peterson has diabetes and a significant mobility disability, stemming from the loss of feeling in his right leg and severe pain and substantial mobility limitations in his right arm. Plaintiff Peterson is a "qualified person with a disability" within the meaning of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.

18.    Plaintiff Michael Curfman has partial paralysis and traumatic brain injury that causes, among other things, a substantial mobility limitation.  Plaintiff Curfman is a "qualified person with a disability" within the meaning of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.

19.    Plaintiff Andre Butler has partial paralysis on his left side, severe arthritis, and a spinal injury.  Plaintiff Butler is a "qualified person with a disability" within the meaning of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.

20.    Plaintiff Joe Gonzalez has partial paralysis in his left leg.  Plaintiff Gonzalez is a "qualified person with a disability" within the meaning of all applicable statutes including

1   42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.

2       21.   Plaintiff Columbus Grigsby has partial paralysis in his left side, including his

3   left arm and leg, as well as Post-Traumatic Stress Disorder and Hypoglycemia.  Plaintiff

4   Grigsby is a "qualified person with a disability" within the meaning of all applicable

5   statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California

6   Government Code § 12926.

7       22.   Plaintiff Derrick White has partial paralysis on his left side as the result of a

8   spinal injury. Plaintiff White is a "qualified person with a disability" within the meaning

9   of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and

10  California Government Code § 12926.

11      23.   The Plaintiff class consists of all detainees and inmates with physical disabilities

12  and disabling medical conditions who because of those disabilities need appropriate

13  accommodations, modifications, services, and/or physical access in accordance with

14  federal and state disability laws.

15      24.   Hereafter, references to Plaintiffs shall be deemed to include the named

16  Plaintiffs and each member of the class, unless otherwise indicated.

17      25.   Defendant County of Los Angeles ("County") is a local government entity

18  within the meaning of the Title II of the ADA, and receives federal funding within the

19  meaning of the Rehabilitation Act.  The County is responsible for providing the jail

20  facilities and for funding the construction and operations of the Los Angeles jail facilities,

21  including funding to and oversight of Defendant Los Angeles Sheriff's Department

22  ("LASD").  The County also promulgates policies and procedures at these facilities.

23      26.   Defendant LASD is a local government entity created under the laws of the state

24  of California, and an agency of Defendant County.  The LASD is responsible for

25  operating the Los Angeles County Jail facilities, including promulgating policies and

26  procedures at those facilities.

27      27.   Defendants LASD and County are "persons" subject to suit within the meaning

28  of 42 U.S.C. § 1983 under *Monell v. New York Department of Social Services*, 436 U.S.

FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF

1   658, 691 (1978). Under California Government Code § 815(a), these Defendants are

2   liable for any and all wrongful acts in violation of state law hereinafter complained of and

3   committed by any of these Defendants' employees acting within the course and scope of

4   their employment.

5       28.    Presently, and at all times relevant to this complaint, Defendants County and

6   LASD have been public entities within the meaning of Title II of the ADA and have

7   received federal financial assistance within the meaning of the Rehabilitation Act, and

8   state financial assistance within the meaning of Government Code Section 11135.

9       29.    Defendant Leroy Baca is the Sheriff of Los Angeles County. He is an elected

10  official of the County and responsible for oversight of Defendant LASD and

11  implementation of its policy. Plaintiffs name Defendant Baca in his official capacity

12  only.

13      30.    Plaintiffs are informed and believe and thereon allege that each defendant was

14  the agent and employee of every other defendant and was at all times acting within the

15  scope of such agency.

16      31.    Hereafter, references to Defendants shall be deemed to include all named

17  Defendants, unless otherwise indicated.

18                          **FACTS APPLICABLE TO ALL CLAIMS**

19      32.    The Los Angeles County Jail system is the largest in the nation, processing more

20  than 180,000 people per year. The system is comprised of a number of facilities,

21  including Men's Central Jail, Twin Towers and the Inmate Reception Center which are

22  located in downtown Los Angeles, the North County Correctional Facility and Pitchess

23  Detention Center both located in Northern Los Angeles County, and the Central Regional

24  Detention Facility, located in Lynwood. The entire County jail system houses

25  approximately 19,000 people at any given time.

26      33.    Throughout the Los Angeles County Jail system there are significant problems

27  for people with disabilities with respect to classification, housing, access to programs and

28  services, and physical access barriers. Defendants systemically fail to effectively evaluate

the needs of people with disabilities within the jails, and to meet those needs through appropriate accommodations and physical access.

34.    Systemic issues include, but are not limited to, failure to appropriately identify people with disabilities in need of accommodations and services, resulting in inappropriate placement and/or classification of people with disabilities; failure to provide appropriate mobility aids, such as wheelchairs, walkers and crutches; failure to accommodate the needs of people with disabilities, including by failing to establish reliable methods for medication, medical supplies and other disability accommodations; failure to modify policies and procedures for people with disabilities; failure to remove multiple and pervasive architectural barriers throughout the jails; failure to allow people with disabilities access to vocational, educational and other programs and services; failure to provide safe and accessible transportation for people with disabilities; failure to have an emergency and/or evacuation policy for people with disabilities; and failure to provide an effective complaint procedure for disability related complaints.

35.    These violations result from a number of pervasive problems, including, but not limited to the following:

    a.  There is no comprehensive set of policies or procedures for identifying inmates with disabilities and determining appropriate accommodations, modifications or services for these individuals;

    b.  Housing and classification decisions are made based on stereotypes and misconceptions, and in an extremely cursory manner, relying mainly on the simplest and quickest observations by staff;

    c.  This classification system results in, among other things, a failure to recognize that persons who do not rely exclusively on wheelchairs may have significant physical restrictions requiring accommodations;

    d.  People who are identified as having disabilities are housed in segregated facilities that provide no access to the programs and services available in the L.A. County Jail system;

FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF

e. People who are not identified as having disabilities, but who nevertheless have disabilities, are placed in units and are subject to procedures that fail to provide necessary accommodations and services;

f. These facilities in which people identified as having disabilities are housed are often those with the poorest conditions, including broken plumbing, lack of any natural light and limited access to outdoor recreation, and are replete with myriad architectural barriers;

g. Architectural barriers are also pervasive throughout the rest of the jail system. This includes a failure to make housing and programming accessible to people with disabilities, as well as a failure to provide emergency evacuation plans for people with disabilities.

36. The above failings, in combination with erroneous assumptions about the capabilities and legal rights of people with disabilities, ensure that the entire population of people with disabilities has little to no access to the vast majority of programs and services of the L.A. County Jail System.

37. This discrimination has a dramatic impact on people with disabilities within the jails as represented by the experiences of the named Plaintiffs in this matter.

38. Plaintiff Peter Johnson has paraplegia. He was in Los Angeles County jail from October of 2007 to January of 2009. Plaintiff Johnson had a number of disability related problems, including but not limited to denial of accommodations, physical access, mobility aids and access to programs at the jail.

39. Upon entry into the jail system Plaintiff Johnson was brought into the IRC. Plaintiff Johnson, who uses a wheelchair, was left in the IRC for approximately 8-10 hours despite the fact that there is no accessible bathroom in the IRC. As a result, he soiled himself, and was left sitting in his own feces for approximately 6-8 hours.

40. Plaintiff Johnson also could not use the drinking fountains or phones in the IRC because they are not accessible. Plaintiff Johnson tried to use an inaccessible phone to make a phone call by attempting to transfer to a bench next to the phone. However, he

fell off the bench and onto the floor in that attempt.

41.   At the IRC Plaintiff Johnson's wheelchair was taken away and replaced with a jail issued chair. The jail wheelchair he was given had numerous problems. The wheelchair made it difficult for Plaintiff Johnson to transfer to the toilet, and also lacked footrests. As a result, Plaintiff Johnson's feet dragged on the floor. The wheelchair would also flip forward if Plaintiff Johnson did not carefully maintain his balance.

42.   Approximately three weeks later the jail returned Plaintiff Johnson's original chair to him but insisted on replacing the wheels with jail issued wheels. However, these new wheels did not fit his wheelchair. As a result, on Plaintiff Johnson's next court trip one of the wheels fell off and he fell out of the chair injuring himself.

43.   Plaintiff Johnson was housed in what is referred to as the 8100 block at Men's Central Jail, which is the unit allegedly designated for wheelchair users. This unit receives little, if any, outdoor exercise. In the fifteen months that Plaintiff Johnson was in this unit, he was only allowed outside for exercise on approximately seven occasions that he can remember.

44.   Other than the times that he went to the roof for exercise, the only time that Plaintiff Johnson has been let outside is to go to court. Other than those events, and Sunday visits to the jail chapel, Plaintiff Johnson remained in his jail cell twenty-four hours per day seven days per week.

45.   Even though he was housed in the unit allegedly designated for wheelchair access, Plaintiff Johnson faced a number of architectural barriers. In one cell, there was a lip at the shower intended to keep water in the shower area. However, this lip also keeps wheelchairs out. In attempting to maneuver over this barrier, Plaintiff Johnson fell and hurt himself. In another cell, the grab bar at the toilet was broken, and Plaintiff Johnson fell on multiple occasions attempting to use the toilet.

46.   Plaintiff Johnson also spent three weeks on the 8000 block at Men's Central Jail. On the 8000 block, Plaintiff Johnson also was not allowed to shower when he soiled himself, which on occasion happened when the jail food disagreed with his stomach.

Even though he was supposed to be allowed to shower more frequently, he often went many days at a time without a shower. Even after he had an accident deputies would not allow him to shower. As a result, he often sat in his own feces for many days at a time.

47.     Plaintiff Donald Peterson, a veteran of the United States military, has diabetes and a significant mobility limitation. Plaintiff Peterson has no feeling in his right leg going all the way up to his mid-torso. He also has chronic pain in his right arm such that he cannot make a fist with his hand. The loss of mobility in his right side makes it difficult for him to walk and balance unaided. He needs either crutches or a wheelchair for mobility. Plaintiff Peterson had a number of disability related problems, including but not limited to denial of accommodations, physical access, mobility aids and medication for his disability.

48.     Plaintiff Peterson was in Los Angeles County jail for approximately six months. When he first arrived at the jail he was provided a wheelchair and placed in the 8100 block. While on that floor, other than church on Sunday, he spent nearly all of his time in his cell. He was never allowed to the roof for exercise, and never participated in any vocational or educational programs.

49.     Approximately three months after his arrival, a deputy moved Plaintiff Peterson to the 6050 unit, which is the unit at Men's Central Jail allegedly designated for people with walkers or crutches. At that time his wheelchair was taken away and he was given a walker. He had never used a walker before. As a result, he fell over when he tried to use the walker.

50.     Despite his disability, Plaintiff Peterson was given a top bunk in the 6050 unit. It was very difficult for him to get up and down from the top bunk. The deputies also took away his catheter bag which Plaintiff Peterson used to urinate at night without getting out of bed. Without the catheter bag Plaintiff Peterson had either to get out of his top bunk or wet the bed. Plaintiff Peterson fell a number of times trying to get out of his top bunk when needing to go to the bathroom.

51.   After a few days in 6050 Plaintiff Peterson was moved again, this time to the general population.  At that time the deputies took away his walker and he was not provided any other mobility aid.  In general population he fell down three times and had to drag himself around and hold onto the walls when he attempted to move.  After three days he was finally provided with a pair of crutches.  After receiving the crutches he was moved back to 6050.

52.   Plaintiff Peterson also has no teeth, in part due to his diabetes, and did not have his dentures in the jail.  He is supposed to be on a soft diet, meaning his food is mashed up, but, except for one week in June of 2008, he was only provided regular food. Plaintiff Peterson tried to make food soft enough by swishing it around with water in his mouth.

53.   Plaintiff Peterson takes medication to control his blood sugar levels as a result of his diabetes. This medication was not provided regularly at the jail, and Plaintiff Peterson went as many as three days without his medication. His blood sugar was also not regularly screened. In the approximately six months he was in jail his blood sugar was screened only approximately two dozen times.

54.   Plaintiff Michael Curfman has partial paralysis and traumatic brain injury.  He has significant difficulty with walking, balance and stability due to his disability. He was in Los Angeles County jail since January of 2007, and was at Men's Central Jail for approximately twenty-two months.  Plaintiff Curfman had a number of disability related problems, including but not limited to, denial of accommodations and mobility aids for his disability, and pervasive architectural barriers.

55.   Before residing at Men's Central, Plaintiff Curfman was at Twin Towers in the medical unit where he was provided a wheelchair for mobility. When he was moved to Men's Central Plaintiff Curfman's wheelchair was taken away despite his partial paralysis and traumatic brain injury.

56.   Upon moving to Men's Central Plaintiff Curfman was initially denied the use of any mobility aid, including a walker. This made standing or walking extremely difficult for him. Even when he was eventually provided a walker, the walker had a broken tip

causing it to be extremely unsteady.

57.   The toilet in Plaintiff Curfman's unit had no grab bars for accessibility. As a result, Plaintiff Curfman attempted to steady himself by attempting to hold on to the wall or the sink. Similarly, Plaintiff Curfman's shower had no grab bars. As a result, it was very difficult for him to steady himself while taking a shower. On at least three occasions he fell while showering.

58.   Plaintiff Curfman asked for a wheelchair to assist in his mobility but was told that because he can stand he could not have a wheelchair. Plaintiff Curfman, who developed his disabilities shortly before being admitted to the jail, received no physical therapy to improve his mobility or his speech. As a result, he has attempted to learn how to walk and speak again on his own.

59.   As a result of his disability Plaintiff Curfman has a hard time controlling his bladder. Because of his bladder control problems, he had accidents in his bed but was not allowed to replace his soiled sheets or soiled clothes. He was not allowed to shower if it was not his turn. If he had an accident and soiled himself he was still required to wait for his turn to shower. As a result, he waited for more than a day in his soiled clothes. He also could not get new sheets when his sheets were soiled. When he asked a deputy for a fresh set of sheets to replace the soiled set he was told he could not have any. He sometimes had to use soiled sheets for almost a week before they were replaced.

60.   Plaintiff Curfman was only allowed out of his cell to shower. He was rarely permitted to go outside for exercise. The only program he had access to is a Friday visit by a chaplain. Otherwise, he did not have any access to programs at the jail.

61.   Plaintiff Andre Butler has partial paralysis on his left side, severe arthritis, and a spinal injury. He has been in Los Angeles County jail since January of 2009. Defendants have discriminated against Plaintiff Butler based on his ability, including but not limited to denying him mobility aids, physical access, accommodations, and adequate transportation to and from the facility.

62.   Upon entry into the jail system Plaintiff Butler was brought to the IRC where a

jail deputy took Plaintiff Butler's wheelchair from him. During the approximately twenty-four hours Plaintiff Butler spent in the IRC, he had to hop around on one leg to get around. Plaintiff Butler also had to hop and limp to his court appearance the following day.

63.     Plaintiff Butler is not provided safe transportation to and from the facility. During a transport from court to MCJ, Plaintiff Butler was unchained from other inmates because of he was unable to walk from court to the bus. He remained unchained from other inmates during the bus ride back from court, and was not secured for the ride. The bus got in an accident, and Plaintiff Butler was thrown from his seat. As a result, Plaintiff Butler's jaw broke in five places, ribs broke on his left side, and his neck was injured. He received emergency treatment at Los Angeles County Medical Center and stayed there for a week and a half before returning to MCJ.

64.     Upon reentry to MCJ, Plaintiff Butler was again brought to the IRC and provided with a four-legged chair with small wheels on the bottom of the legs. This "wheelchair" provided Plaintiff Butler with no way to push himself around. He stayed in that chair for approximately eighteen hours before he was given a functioning wheelchair and taken to the Medical Services Building in Twin Towers. After a number of weeks in the Medical Services Building, Plaintiff Butler was transferred to the 8000 unit.

65.     Even though the 8000 unit is allegedly designated for wheelchair access, Plaintiff Butler faced a number of architectural barriers. The single man cells on the 8000 unit did not have grab bars for the toilet or the showers. In the ten-man dorm, only one of the two toilets had grab bars. As a result, Plaintiff Butler fell several times when transferring from the toilet to his wheelchair.

66.     Plaintiff Butler has faced myriad of problems related to nonfunctioning wheelchairs. The first wheelchair the jail provided Plaintiff Butler lacked footrests. The absence of footrests caused Plaintiff Butler's feet to drag and scrape the floor when he moved. Plaintiff Butler had his criminal attorney bring him a personal wheelchair, but after a return from a trip to los Angeles County Medical Center for follow-up treatment

FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF

for his jaw injury, deputies at MCJ claimed Plaintiff Butler's personal wheelchair was "lost." The jail-issued wheelchair they provided him had no brakes and was so worn that his buttocks sat directly on the metal frame.

67.   Plaintiff Butler spent most of approximately four months in disciplinary segregation because he refused to allow MCJ staff to take his wheelchair from him and move him to the unit designed for people who use walkers and crutches. In August of 2009, deputies first told Plaintiff Butler he was "declassed"—meaning he would be moved from the wheelchair unit to either the general population or the united designed for people who use walkers or crutches. When he refused to get out of his wheelchair, deputies placed Plaintiff Butler in disciplinary segregation.

68.   Between August of 2009 and January of 2010, Plaintiff Butler was "declassed" and "reclassed"—meaning an MCJ doctor reassigned him to the wheelchair unit— approximately five times, despite the fact that his condition was unchanged. Because Plaintiff Butler refused to allow jail staff to take his wheelchair from him, he typically went to disciplinary segregation when he was "declassed," and came out of segregation when he was "reclassed."

69.   Plaintiff Joe Gonzalez has partial paralysis in his left leg.  He has been in Los Angeles County jail since October 2009 and is currently housed at the 8100 unit of Men's Central Jail. Plaintiff Gonzalez has a number of disability related problems, including but not limited to denial of accommodations, physical access, mobility aids and access to programs and services at the jail.

70.   Upon arrest, Plaintiff Gonzalez stated his need for a wheelchair but was informed that he did not need to bring his wheelchair with him to the police station. Plaintiff Gonzalez uses a wheelchair to travel distances over 10 to 20 feet.  Plaintiff Gonzalez assumed that he might not be questioned for very long and obeyed the officer's order.  When Plaintiff Gonzalez had been held at the station for some time, he again stated he needed his wheelchair.  Officers at the police station told him that he would get a wheelchair when he arrived to the IRC or "glass house."

FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF

71.     Upon arriving at the jail, Plaintiff Gonzalez was not provided with a wheelchair. Instead, Plaintiff Gonzalez was forced to climb a flight of stairs, descend a flight of stairs, and climb onto a bus to travel to his first arraignment.  Plaintiff Gonzalez attempted to perform these activities while holding his paralyzed leg with both hands and hopping on one leg.  Plaintiff Gonzalez fell when trying to hop onto the bus.  Plaintiff Gonzalez was placed in a holding tank where there was no room to sit except by holding his legs to his chest.  Plaintiff Gonzalez's paralyzed leg was beginning to swell and turn purple because he is supposed to elevate his leg regularly to keep the blood circulating.  Plaintiff Gonzalez fell when leaving the holding tank.  When Plaintiff Gonzalez informed deputies that he needed a wheelchair, he was brought crutches.  Plaintiff Gonzalez attempted to use the crutches but was not able to do so.  A nurse saw that Plaintiff Gonzalez's leg was swollen and purple and stated he should elevate it.  Plaintiff Gonzalez began to elevate his leg on a bar and a deputy yelled at him for doing so, accusing him of acting like he was royalty.  Plaintiff Gonzalez informed the deputy that he was following the nurse's order and that his leg was paralyzed.  The nurse returned and Plaintiff Gonzalez was finally provided a wheelchair.  This wheelchair did not have an arm that Plaintiff Gonzalez could remove to safely transfer to a bed or the toilet.

72.     Plaintiff Gonzalez was informed that he would be transferred to the wheelchair unit or the 8100 floor.  However, there were no open beds on 8100 so Plaintiff Gonzalez slept for two days in the IRC sitting in the wheelchair.

73.     After Plaintiff Gonzalez was placed on 8100, he resided there for three or four months until he was de-classed to the "step-down" unit, also known as 7000, for almost three weeks.  On unit 7000 wheelchairs are not available; only walkers and crutches are. On unit 7000, the beds do not elevate like they do on 8100 to assist with blood circulation in a paralyzed leg.  Plaintiff Gonzalez was placed on unit 7000 for about 30 days and attempted to use crutches as best he could before his paralyzed left leg was so swollen and purple that jail staff decided to return the wheelchair to him to protect his health and safety from further deterioration.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

74.     When Plaintiff Gonzalez was first approached about having been de-classed to 7000, he was told that if he did not get out of his wheelchair and use crutches that he would go into solitary confinement for 30 days, which could be renewed continuously until he did get out of the wheelchair and use crutches. Plaintiff Gonzalez did not want to go into solitary confinement and lose his privileges. It is important to him to be able to see his wife, for example. He did not want to give that right up, so he tried his best to use the crutches and was de-classed to the 7000 unit.

75.     When Plaintiff Gonzalez began using crutches on the 7000 unit, his leg began to swell and turn purple because it was not being properly circulated. Plaintiff Gonzalez's foot dragged with the toe pointed down across every jail surface he traveled. This is because Plaintiff Gonzalez cannot elevate his foot from the ankle because it is paralyzed. Plaintiff Gonzalez was not able to travel distances longer than 10 to 20 feet with the crutches and so he was denied equal access to jail programs and services. Plaintiff Gonzalez once fell onto the floor next to the toilet when his leg gave out as he tried to transfer from his crutches to the toilet using the wall with no grab bars. Plaintiff Gonzalez was forced to crawl to the toilet that did not have grab bars nearby. Plaintiff Gonzalez's family stopped visiting him as often because they knew how difficult and time consuming it was for him to travel to the visiting room, which included climbing up and down stairs and along long corridors to meet with them. Or if they did arrive to visit, it would take Plaintiff Gonzalez so long to travel to meet them, that they had to leave before he arrived, and therefore he was unable to meet with them during the visiting hours. Plaintiff Gonzalez fell in the shower because there were no grab bars and he was trying to shower while using the crutches. Plaintiff Gonzalez did not travel to the roof for recreation when he was on unit 7000 because the journey was too far for him to accomplish with crutches. Plaintiff Gonzalez was forced to travel to court on the general population bus with crutches. He could not lift his leg onto the bus and fell face-first into the bus.

76.     Plaintiff Gonzalez has filed several inmate complaints that have gone

unanswered.  The judge in his case, having observed the condition of his leg, placed an order for him to be immediately evaluated.  Once Plaintiff Gonzalez was evaluated, he was provided with a wheelchair and placed back on 8100.

77.    Plaintiff Columbus Grigsby has partial paralysis in his left side, including his left arm and leg, as well as Post-Traumatic Stress Disorder and Hypoglycemia.  He has been in Los Angeles County jail since November 2009 and is currently housed at the 8100 unit of Men's Central Jail.  Plaintiff Grigsby has a number of disability related problems, including but not limited to denial of accommodations, physical access, mobility aids and access to programs and services at the jail.

78.    Upon arrest, Plaintiff Grigsby's quad-cane was taken away.  In the community, Plaintiff Grigsby uses a quad-cane for short distances and a manual wheelchair for longer distances.  Plaintiff Grigsby was placed in a holding cell without his quad-cane after he was arrested.  When Plaintiff Grigsby was transferred from the holding cell to the Inmate Reception Center ("IRC"), his quad-cane was taken away permanently and he was provided a wheelchair in order to be transported to the IRC.  However, when Plaintiff Grigsby arrived at the IRC, the wheelchair was taken away from him and he had no quad-cane.

79.    Plaintiff Grigsby was placed in the medical unit at the IRC, and when the nurse called out his name to come forward, he had to crawl on the floor to move toward her since he no longer had a wheelchair or his quad-cane.  The nurse provided him with a wheelchair and Plaintiff Grigsby was placed on the 8100 unit.  The wheelchair provided to Plaintiff Grigsby was not accessible to him based on his disability.  The wheelchair did not have footrests.  Plaintiff Grigsby's left foot is paralyzed, and without the footrest, his foot drags on the floor and the wheelchair wheels would roll over his foot.  Plaintiff Grigsby's requests to the deputies for footrests were ignored.  Plaintiff Grigsby was forced to persuade another inmate to trade wheelchairs with him in order to get a footrest.  While Plaintiff Grigsby now has footrests, the seat of his chair does not separate him from the cross-bars, causing pain on a daily basis.  Plaintiff Grigsby also had difficulty

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

transferring to his bed or to the toilet because there was not a removable arm rest on the first jail chair.

80.     Plaintiff Grigsby was ordered on January 25, 2010 to roll up his bed because he was being declassed to the 7000 step down unit. The deputy informed Plaintiff Grigsby that he was required to use a walker from this point forward. Plaintiff Grigsby informed the deputy that a walker was not accessible to him because of paralysis on one entire side of his body. A walker requires the use of two arms, and Plaintiff Grigsby's left arm is paralyzed. Plaintiff Grigsby was later informed by the deputy that he was going to be sent to solitary confinement for failing to obey the deputy's order to get out of his wheelchair and use the walker. Plaintiff Grigsby served 20 days in solitary confinement for failing to obey this order.

81.     When in solitary confinement Plaintiff Grigsby was denied access to jail programs and services that are important to him. Plaintiff Grigsby was denied access to the Commissary. Plaintiff Grigsby is Hypoglycemic and needs to purchase sweets in order to maintain his blood sugar level. Plaintiff Grigsby was instead forced to negotiate with other inmates for their jelly packets from meals in the hole in order to maintain his blood sugar level. Plaintiff Grigsby was also denied access to the television and the telephone. These services are important to Plaintiff Grigsby because they keep him connected to the outside world. Plaintiff Grigsby has Post-Traumatic Stress Disorder and is prone to depression. Having these services taken away from him while he was in solitary confinement led him to become severely depressed with suicidal ideation.

82.     Plaintiff Grigsby fell on 8100 when trying to get out of the shower because there are no grab bars at the entrance/exit of the shower once a detainee steps out. Plaintiff Grigsby fell face first and suffered injury from the fall.

83.     Plaintiff Grigsby is also unable to write inmate jail complaints on his own because of the paralysis in the hand that he writes with. Plaintiff Grigsby has to ask other inmates to draft them for him, which violates his confidentiality regarding medical and other personal issues. Plaintiff Grigsby has nonetheless filed complaints to the best of his

FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF

ability that have been ignored.

84.    Plaintiff Grigsby is concerned that he will be de-classed again because he recently was ordered to see the doctor who previously de-classed him. Plaintiff Grigsby does not believe the jail doctor gave him an adequate evaluation regarding his paralysis. Plaintiff Grigsby has not as yet been de-classed, but he is fearful that deputies could come for him any day and tell him to roll up his belongings and use a walker. Plaintiff Grigsby will not be able to use a walker if they ask him to. Plaintiff Grigsby does not want to go back into solitary confinement for failing to obey the deputy's order.

85.    Plaintiff Derrick White has partial paralysis on his left side as the result of a spinal injury. He has been in Los Angeles County jail since February of 2009. Defendants have discriminated against Plaintiff Butler based on his ability, including but not limited to denying him mobility aids, physical access, and accommodations.

86.    Upon entry into the jail system, Plaintiff White was brought to the IRC. During the approximately eighteen hours he spent in IRC, Plaintiff White was not given any kind of mobility aid. Plaintiff White was forced to slide himself on the metal benches or crawl to get around. Due to the absence of accessible toilets in the IRC, Plaintiff White had to crawl to the toilet and lift himself onto it using the sink to steady himself.

87.    Plaintiff White was initially provided a pair of crutches and assigned to the 7000 unit for people who use walkers or crutches. Due to the severity of his disability, Plaintiff White had great difficult ambulating with crutches. He could only walk while bracing his left side against a wall or with the help of a deputy. Plaintiff White was assigned to a six-man cell with three sets of bunk beds. The lower bunks were already taken and, due to his disability, Plaintiff White could not get into the top bunk, so he slept on a mattress on the floor.

88.    Approximately once a week Plaintiff White was called out to the "declass line," where inmates lined up before a jail doctor who told the inmates to try to walk. Plaintiff White repeatedly informed the doctors that he could not walk, but the doctors informed him he had to try. Once, while trying to walk to for the doctor on the declass line,

Plaintiff White fell and hit the ground face first, causing him great pain.

89.    During one declass line, the doctor told Plaintiff White he was faking not being able to walk. Later that night, deputies told Plaintiff White he had been declassed. The next morning deputies took his crutches from him and moved him to the general population unit. Plaintiff White was forced to crawl to get around the jail, and he even crawled to his attorney visits. When his attorney tried to carry him, deputies told Plaintiff White he had to try to walk on my own.

90.    After a month and a half in the general population, a doctor examined Plaintiff White and sent him back to the unit for people who use crutches or walkers. A few weeks later, Plaintiff White received another examination, complete with X-rays of his spine, and was then provided a wheelchair and moved to the wheelchair unit.

91.    Approximately a week later, Plaintiff White was declassed again and sent to the general population. Plaintiff White spent another month in general population, forced to crawl to get around, before being sent back up to the wheelchair unit.

92.    In October of 2009, deputies informed Plaintiff White he had been declassed once again. When Plaintiff White refused to get out of his wheelchair, deputies placed him in administrative segregation. For approximately four months, Plaintiff White remained in disciplinary segregation—with no visitation, no recreation, and no access to programs—for refusing to give up his wheelchair.

93.    The above examples demonstrate the pain, fear, humiliation and isolation that people with disabilities experience within the Los Angeles County jail system. Indeed, many people with disabilities find the conditions so intolerable that they are willing to agree to a plea bargain, one that they otherwise may not have accepted, simply to leave these conditions.

94.    Plaintiffs have filed administrative complaints with the Los Angeles County jail and have exhausted procedures for such administrative complaints. Defendants have been on notice about these conditions for a considerable amount of time, and have been specifically on notice about the issues raised in this lawsuit for at least a year.

95.   Plaintiffs therefore seek injunctive relief requiring Defendants to ensure compliance with the ADA and other laws prohibiting discrimination against individuals with disabilities.

## CLASS ACTION ALLEGATIONS

96.   Plaintiffs bring this action individually, and on behalf of all inmates who are or will be held within any and all Los Angeles County Jail facilities, as a class action under Rule 23 of the Federal Rule of Civil Procedure.

97.   The class consists of all detainees and inmates with physical disabilities and disabling medical conditions who because of those disabilities need appropriate accommodations, modifications, services, and/or physical access in accordance with federal and state disability laws.

98.   Plaintiffs and the class they represent are informed, believe, and thereon allege that Defendants have failed and continue to fail to comply with the ADA and with the Rehabilitation Act and analogous state statutes.

99.   Plaintiffs and the class they represent are informed, believe, and thereon allege that Defendants have not adopted and do not enforce appropriate policies and procedures to ensure that LASD is in compliance with these statutes to ensure nondiscrimination against persons with disabilities and equal access to programs, services and activities for persons with disabilities.

100.   Plaintiffs and the class they represent are informed, believe, and thereon allege that Defendants have failed and continue to fail to provide LASD officers and employees with appropriate training regarding their legal obligations under relevant federal and state statutes.

101.   The violations of the ADA, the Rehabilitation Act and related federal and California State statues set forth in detail have injured all members of the proposed class and violated their rights.

102.   The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

a. The class is so numerous that it would be impractical to bring all class members before the Court;

b. There are questions of law and fact which are common to the class;

c. The named Plaintiffs' claims for declaratory and injunctive relief are typical of the claims of the class;

d. The named Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are extremely experienced in law reform class actions and the disability rights issues in this case;

e. Defendants have acted or refused to act on grounds generally applicable to the class;

f. The questions of law and fact which are common to the class predominate over individual questions; and

g. A class action is superior to other available means of resolving this controversy.

103. The common questions of law and fact, shared by the named Plaintiffs and all class members, include:

a. Whether Defendants are violating Title II of the ADA, 42 U.S.C. sections 12131, *et seq.*, by failing to make their programs, services and activities accessible to and useable by persons with disabilities, and otherwise discriminating against persons with disabilities, as set forth above;

b. Whether Defendants are violating Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, by failing to make their programs, services and activities accessible to and useable by persons with disabilities, and otherwise discriminating against people with disabilities, as set forth above.

c. Whether Defendants are violating California Government Code Section 11135 (a), which prohibits denial of benefits to persons with disabilities of any program or activity that is funded directly by the state or receives any financial assistance from the state.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

   d.  Whether Defendants are violating California Civil Code §51 *et seq.*, by failing to provide full and equal access to people with disabilities.

   e.  Whether Defendants are violating California Civil Code §54 *et seq.*, by failing to provide full and equal access to persons with disabilities.

   f.  Whether Defendants are violating California Government Code §4450, *et seq.*, by failing to provide full and equal access to persons with disabilities.

   g.  Whether Defendants are violating the Eighth Amendment to the U.S. Constitution as a result of the conditions of confinement.

   h.  Whether Defendants are violating the Fourteenth Amendment to the U.S. Constitution as a result of the conditions of confinement.

104.  The class is believed to be so numerous that joinder of all members is impracticable.  On information and belief, more than one thousand individuals with physical disabilities or disabling medical conditions are currently detained or confined in the Los Angeles County Jail System.  The inmate population within the Los Angeles Jail System changes constantly and therefore not all class members can be specifically identified.

105.  Plaintiffs contemplate the eventual issuance of notice to the proposed class members that would set forth the subject and nature of the instant action. Defendants' records may be used for assistance in the preparation of such notices. To the extent that any further notices may be required, Plaintiffs contemplate the use of additional media and/or mailings.

**FIRST CLAIM FOR RELIEF**

**The Americans with Disabilities Act**

**42 U.S.C. §12101 *et seq.***

106.  Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

107.  Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C.

§ 12101(a) (2).

108.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b) (1)-(2).

109.   Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

110.   The ADA requires public entries to ensure that their programs, services and activities are accessible to and useable by detainees and inmates with disabilities.

111.   At all times relevant to this action, Defendants were each a "public entity" within the meaning of Title II of the ADA and provided a program, service or activity to the general public.

112.   At all times relevant to this action, Plaintiffs are qualified individuals within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of the defendants.  42 U.S.C. § 12131.

113.   Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of a disability. 42 U.S.C. § 12132.

114.   Defendants have excluded plaintiffs from participation in the services, programs and activities of the Los Angeles County Jail facilities, and have denied them the rights and benefits accorded to other inmates, solely by reason of their disabilities in violation of the ADA.  In addition, the defendants have violated the ADA by failing or refusing to provide plaintiffs with reasonable accommodations and other services related to their disabilities. *See generally* 28 C.F.R. § 35.130.

115.   Defendants are mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with

disabilities." 28 C.F.R. §§ 35.150; *see also* 28 C.F.R. §§35.149 & 35.151. Defendants
continue to violate the ADA by maintaining inaccessible facilities that deny people with
disabilities access to programs, services and activities.

116.   Plaintiffs are informed, believe and thereon allege that Defendants and their agents
and employees have failed and continue to fail to:

   a.   Provide necessary accommodations, modifications, services and/or physical
        access necessary to enable inmates with disabilities to participate on an equal
        basis in programs, services and activities.

   b.   Develop and enforce procedures for the Los Angeles Sheriff Department to
        ensure provision of necessary accommodations, modifications, services and/or
        physical access necessary to enable inmates with disabilities to participate on
        an equal basis in programs, services and activities.

   c.   Train and supervise the jail personnel to provide necessary accommodations,
        modifications, services and/or physical access necessary to enable inmates
        with disabilities to participate on an equal basis in programs, services and
        activities.

117.   Pursuant to the ADA's implementing regulations, specifically 38 C.F.R. 150(d)(1),
Defendants were required to develop a written plan setting forth the steps necessary to
ensure that the Los Angeles County Jail facilities are in compliance with the ADA's
mandates.  On information and belief, Defendants have not prepared a self-evaluation and a
transition plan that is compliant with the ADA.

118.   As a direct and proximate result of the aforementioned acts, Plaintiffs have
suffered, and continue to suffer humiliation, hardship and anxiety, as well as deteriorating
physical conditions, due to Defendants' failures to address accommodations,
modifications, services and access required for Plaintiffs' disabilities.

119.   Because Defendants' discriminatory conduct is ongoing, declaratory and
injunctive relief are appropriate remedies.  Moreover, as a result of Defendants' actions,
Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

120.   Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

## SECOND CLAIM FOR RELIEF

### Section 504 of the Rehabilitation Act

### 29 U.S.C. § 794 *et seq.*

121.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

122.   Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794.

123.   Each Plaintiff is at all times relevant herein a qualified individual with a disability within the meaning of the Rehabilitation Act because they have a physical impairment that substantially limits one or more of their major life activities.  29 U.S.C. § 705(20) (B).

124.   Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to inmates at the Los Angeles County Jail facilities. *See* 29 U.S.C. § 794 (b).

125.   At all times relevant to this action Defendants were recipients of federal funding within the meaning of the Rehabilitation Act.   As recipients of federal funds, they are required to reasonably accommodate inmates with disabilities in their facilities, program activities, and services.  It further requires the Defendants to modify their facilities, services, and programs as necessary to accomplish this purpose.

126.   Through their acts and omissions described herein, Defendants have violated the Rehabilitation Act by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs to discrimination in the benefits and services Defendants provides to the detainees and inmates without disabilities.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

127.   Plaintiffs are informed, believe, and based thereon allege that Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of the rights of Plaintiffs.  It is also alleged that the defendants have violated the Act by providing substandard accommodations or refusing to provide plaintiffs with reasonable accommodations for their disabilities.

128.   Pursuant to the Rehabilitation Act's implementing regulations, specifically, 28 C.F.R. 42.521, the Defendants were required to make any structural changes necessary to render the programs and activities in existing Los Angeles County Jail facilities accessible to persons with disabilities as expeditiously as possible.  As part of that process, the Defendants were required to develop a written plan setting forth the steps necessary to complete such changes. Defendants have failed to develop a written plan and failed to abide by the implementing regulations under the Rehabilitation Act.

129.   As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer humiliation, hardship, anxiety as well as deteriorating physical conditions due to Defendants failures to address accommodations, modifications, services and access required for their disabilities.

130.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive reliefs are appropriate remedies. Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

131.   Pursuant to 29 U.S.C. § 794(a) Plaintiffs are entitled to declaratory and injunctive relief and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

## THIRD CLAIM FOR RELIEF
### California Government Code § 11135

132.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

133.   Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of . . . disability, be unlawfully

denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

134.   At all times relevant to this action, LASD was an agency of Defendant County. At all times relevant to this action, the LASD and County, received financial assistance from the State of California.

135.   Through their acts and omissions described herein, Defendants have violated and continue to violate California Government Code § 11135 by unlawfully denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination under, Defendants' programs and activities.

136.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

137.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## FOURTH  CLAIM FOR RELIEF

### Unruh Civil Rights Act

### California Civil Code § 51 *et seq.*

138.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

139.   Through the acts and omissions described herein, Defendants have violated California Civil Code § 51(b) which provides in pertinent part that "All persons within the jurisdiction of this state are free and equal, and no matter what their...disability or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

140.   Pursuant to California Civil Code § 51(f), a violation of the ADA also constitutes a violation of California Civil Code §51 et seq.

141.   The Los Angeles County Jail system is a "business establishment" within the meaning of California Civil Code §51 et seq.

142.   Through the acts and omissions described herein, Defendants are violating California Civil Code § 51 et seq. by denying Plaintiffs full and equal access to its program comparable to the access that it offers to others.

143.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

144.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive reliefs are appropriate remedies. Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

# FIFTH CLAIM FOR RELIEF

## Blind and Other Physically Disabled Persons Act

## California Civil Code § 54 *et seq.*

145.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

146.   Through the acts and omissions described herein, Defendants are violating California Civil Code § 54 which states that "[i]ndividuals with disabilities or medical conditions have the same rights as the general public to the full and free use of public services."

147.   Under California Civil Code § 54(c), a violation of the ADA also constitutes a violation of California Civil Code §§ 54 *et seq.*

148.   Plaintiffs are persons with disabilities within the meaning of California Civil Code § 54(b) (1) and California Government Code § 12926.

149.   The County and the LASD provide public services, within the meaning of California Civil Code §§ 54 *et seq.*

150.   By failing to provide accommodations, modifications, services and physical access to the detainees and inmates with disabilities, Defendants are violating California Civil Code § 54, by denying detainees and inmates full access to the jail programs, services and activities.

151.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

152.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive reliefs are appropriate remedies. Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## SIXTH CLAIM FOR RELIEF

### California Government Code § 4450, *et seq.*

153.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

154.   Defendants' facilities are publicly funded and intended for use by the public within the meaning of California Government Code § 4450, *et seq.* Defendants have constructed, altered, installed, maintained and/or operated its facilities in violation of disability access requirements under California Government Code § 4450, *et seq.*, and regulations implemented pursuant thereto. The aforementioned acts and omissions of the Defendants constitute a denial of equal access to and use of Defendants' facilities.

155.   Defendants' failure to provide full and equal access to their facilities has caused Plaintiffs to suffer deprivation of their civil rights.

156.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

157.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive reliefs are appropriate remedies. Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## SEVENTH CLAIM FOR RELIEF

### Eighth Amendment to the U.S. Constitution

### 42 U.S.C. § 1983

158.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

159.   42 U.S.C. § 1983 provides a remedy for constitutional violations and violations of federal statutes, where the violations are committed under color of State law.

160.   Defendants are also liable for its failure to train its employees, creating § 1983

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

liability where the failure to train amounts to deliberate indifference to the rights of inmates with whom those employees are likely to come into contact.

161. The Defendants have acted in reckless disregard for the serious needs of the inmates, constituting willful violations of the Eighth Amendment to the Constitution of the United States, by imposing cruel and unusual punishments on the inmates.

162. All Defendants have engaged in discriminatory acts and practices constituting willful violations of the Rehabilitation Act of 1973 and the Americans with Disabilities Act.

163. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

164. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## EIGHTH CLAIM FOR RELIEF

### Fourteenth Amendment to the U.S. Constitution

### 42 U.S.C. § 1983

165. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

166. Detainees' rights arise under the Due Process Clause of the Fourteenth Amendment.

167. The Equal Protection Clause of the Fourteenth Amendment mandates that Defendants shall not deny to any person within its jurisdiction the equal protection of the laws.

168. Defendants' failure to provide for sufficient training regarding detainees with disabilities, as well as its failure to implement other procedures to safeguard the disability rights of the detainees, amounts to deliberate indifference to their rights.

FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF

169.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, as well as deteriorating physical conditions due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

170.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive reliefs are appropriate remedies. Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment as follows:

1. A declaration that Defendants' conduct as alleged herein has violated, and continues to violate, Title II of the Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973; California Government Code §§ 11135 and 4450; California Civil Code §§ 51 and 54; and the Eighth and Fourteenth Amendments to the U.S. Constitution;

2. Preliminarily and permanently enjoin Defendants from violating the Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973; California Government Code §§ 11135 and 4450; California Civil Code §§ 51 and 54; and the Eighth and Fourteenth Amendments to the U.S. Constitution;

3. Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future, absent continuing jurisdiction;

4. Award Plaintiffs' attorneys' fees and costs, as provided by statute; and

5. Such other relief as the Court finds just and proper.

DATED: June 9, 2010

Respectfully submitted,

DISABILITY RIGHTS LEGAL CENTER

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

WINSTON & STRAWN, LLP

DISABILITY RIGHTS CALIFORNIA

By: _____
　　Matthew Strugar
　　Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF

# PROOF OF SERVICE

*Peter Johnson, et al.  v. Los Angeles County Sheriff's Department, et al.*
*Case No. CV 08-3515 DDP (JTLx)*

I certify that I am authorized to serve documents in this action, as I am over the age of 18 and not a party to the action.  I am employed in the County of Los Angeles, State of California, at the Disability Rights Legal Center, in the office of a member of the Bar of this Court at whose direction service was made.  My business address is 919 Albany Street, Los Angeles, California 90015.  On the date below, I served the foregoing document:

# FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

[  ]   BY ELECTRONIC MAIL:  I caused such document to be served via electronic mail (e-mail) on the parties in this action by transmitting a true copy to the e-mail addresses listed for each party.

[ X ]   BY MAIL: I placed a true copy of the foregoing document(s) in a sealed envelope addressed to each interested party addressed as set forth below.  I placed each such envelope for collection and mailing at the Disability Rights Legal Center at Loyola Law School, Los Angeles, California.  I am readily familiar with Loyola Law School's practice for collecting and processing of correspondence for mailing with the United States Postal Service.  Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

True copies were addressed to and served upon:

**LAWRENCE, BEACH, ALLEN & CHOI, PC**
**Paul B. Beach, Esq.**
**Justin Clark, Esq.**
**100 West Broadway, Suite 1200**
**Glendale, CA 91210-1219**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on June 10, 2010 at Los Angeles, California.

_____
Steve A. Cuellar